You may proceed. Thank you, Your Honor. Good morning. May it please the Court. I am Elizabeth Sanchez Kennedy, and I represent the petitioner, Kelmy Velasquez-Castillo, in these proceedings. There are two independent, distinct legal issues that warrant remand in this case. First, as the government concedes, the Court failed to address the issues of statutory construction presented, whether the TVPRA mandates reopening Kelmy's proceedings under the law. Second, the Board failed to consider the new evidence of death threats after his deportation in violation of the TVPRA. Petitioner respectfully requests that this Court remand the Board's decision denying his motion to reopen with guidance on the implementation of the TVPRA. In this case, the government agrees that this case should be remanded due to analytical gaps. I'll begin with the first issue of statutory construction, that the TVPRA mandates reopening in this case. DHS violated the unambiguous language of the TVPRA by removing Kelmy instead of placing him in removal proceedings. DHS's duty to place minors in removal proceedings prior to removing them is not discretionary. The TVPRA states that any unaccompanied child sought to be removed shall be placed in removal proceedings under 240 of the INA. In fact, this Court has referred to TVPRA-derived removal proceedings as mandatory removal proceedings. This means that if DHS wanted to remove Petitioner, they were required first to put him in front of an immigration judge and let him have the opportunity to defend himself against deportation. The TVPRA is designed to prevent erroneous and swift removal of children back to the dangers that they fled by requiring them to first appear before an immigration judge. Well, on the age of 18, is that measured from the filing or from the hearing? Correct. That is measured from the date of filing an asylum application, which is a right afforded to... So under the TVPRA, the fact that he was not 18 when he filed it continues even though he passes 18? Correct. And you're referencing one of the greatest protections of the TVPRA, which is that the an unaccompanied immigrant child. DHS deprived him of that right as well, but even before we get there, when an individual such as my client enters the United States and is designated by DHS an unaccompanied child, the rights and protections immediately attach to that immigrant child. And in this case, before we get to the filing of the asylum application, he had the right to be placed in removal proceedings before being removed by DHS. Irrespective of his gaining 18 years of age. That's correct. He had that right at the moment he entered the United States and was designated an unaccompanied child. The fact that he later turned 18 and he's now over 18 does not deprive him of that right. Kelmy entered the United States in March 2020 and DHS, as I just mentioned, immediately designated him an unaccompanied immigrant child. Pursuant to the TVPRA, so moving backwards in time from the asylum application, DHS transferred him at that moment, at that designation, and in accordance with the TVPRA, DHS transferred him to a facility for unaccompanied immigrant children with the Office of Refugee Resettlement. These facts are not in dispute. And this is the moment where DHS stopped complying with the TVPRA. One month later, DHS took him from a shelter for minors, the same shelter they transferred him to a month earlier, and deported him in the middle of the night. They deported him because he had previously participated in MPP proceedings, or Migrant Protection Protocol proceedings, as a derivative applicant with his mother. However, days prior to his deportation, while still in the shelter for minors, he filed an asylum application, as you mentioned, pursuant to the TVPRA with the asylum office, and a timely motion to reopen with the immigration judge. While fully on notice of his status as an unaccompanied immigrant child, DHS did not And fully on notice of his fear to return and his pending asylum application, DHS removed him to Honduras in violation of the TVPRA. Although the TVPRA prohibits this, the immigration judge and the board incorrectly upheld DHS's removal of him in violation of the TVPRA. As I just discussed, after petitioner's designation as a UAC, or an unaccompanied immigrant child, the TVPRA was controlling, and it stuck with the petitioner from the moment of apprehension throughout the resolution of his case. In its brief to the immigration judge, DHS justified the deportation in violation of the TVPRA by arguing that, quote, the TVPRA places no temporal requirement on when an unaccompanied minor must be given the benefit of 240 proceedings. DHS's reading of this statute cannot be reconciled with the plain text of the statute. Petitioner was not an unaccompanied minor when he was in 240 removal proceedings when he appeared with his mother in immigration court. He was an unaccompanied immigrant child in his second entry in March of 2020, and the TVPRA controlled from that moment on. It would be illogical to apply some, but not all, of the TVPRA rights to a person retroactively at a time when he was not an unaccompanied minor. The TVPRA provides a package of rights, which I just mentioned and I listed. The most important in this case is the transfer to custody of the Office of Refugee Resettlement, the right to go before an immigration judge and defend himself against deportation, and also the right to have the asylum application adjudicated, at first instance, by the asylum office. DHS's removal of my client, of Kelmy, preemptively deprived him of that right to seek asylum. He was not able to pursue his asylum application, which is currently still pending at the USCIS asylum office. The board and immigration judge failed to meaningfully address petitioner's arguments related to DHS's non-discretionary duty to place him in removal proceedings. The board's decision acknowledges Kelmy's TVPRA argument, but holds it cannot review DHS's discretionary decision as to whether to place an individual in removal or expedited removal proceedings. By holding this, the board completely ignores the arguments that it is not within DHS's discretion to place a child in removal proceedings before removing them. If the board determined that the mandatory language of the TVPRA is actually discretionary, then it failed to state so or provide analysis. Cases that the board's decision rely on are inherently distinguishable and not applicable in this case. In all three cases, there's two decisions from the board, one from the motion to reopen and the other from the motion for reconsideration. And in the latter decision, in all three cases, the respondent's age did not trigger TVPRA protections, as they were all adults. And number two, in all cases, the respondents were contesting the sufficiency of the proceedings. They were placed in one proceeding over another rather than the complete lack of proceedings as in Kelmy's case. The Department of Justice has charged multiple federal agencies with implementing the TVPRA in calls on EOIR and the immigration court and the board to make determinations over disputes of TVPRA protections, and they've done so in the past. Yet, in the instant case, the immigration judge and the board failed to intervene or even discuss the disputed statutory and procedural violations. Such analytical gaps require remand. Taking a step back and talking about the entry, that March 2020 entry, DHS's actions also fail under longstanding statutes governing individuals at the border. Kelmy came to the border and the government, sorry, immigration officials, led him in, transferred him to custody of the federal government, and the TVPRA controlled. However, if for some reason the court finds that the TVPRA was not triggered, which we do not concede, DHS then reused or recycled that MPP order to remove him the second time. DHS cannot reuse an old removal order against an individual without proper basis, without providing additional procedures. So under no circumstances can DHS's actions stand against the law. Number two, the issue number two, moving on to the second issue, the immigration judge and the board failed to consider Kelmy's new and previously unavailable evidence, specifically evidence of death threats post-removal. After his deportation in violation of the TVPRA, while his motion to reopen was pending, several masked men tried to kill him. He was threatened, and the police refused to protect him. Kelmy filed proof or evidence of these later post-removal threats, and the threats went to the heart of his claim. They were relevant, and they were previously unavailable because they had not happened yet. Neither the immigration judge nor the board discussed the post-removal threats in denying the motion to reopen. So your claim for new evidence is solely the death threats that happened post-removal, is that, am I understanding your argument correctly? The new and previously unavailable, that is part of it, yes. The other part is his inability to disclose his sexual orientation at the time of the original MPP or removal proceedings made that information simply put unavailable, and that is part of the argument as well. You say his inability? His inability to articulate his sexuality, yes. He described, well, he described a torturous childhood where he felt different and he was attacked for these differences. His attacks and his threats against him were condoned by adults and authority figures, which perpetuated his instincts to repress his sexuality. He operated in survival mode, and at one point he was suicidal. And in that situation, he was incapable of coming to terms with his sexuality, understanding the significance of his sexuality, understanding the asylum law and the intricacies of the asylum law that said that he could file an independent claim and then complete and file an asylum application in English during the MPP removal proceedings. These arguments, both and primarily the death threats that were overlooked or not considered at all, in conjunction with the circumstances surrounding his inability to articulate an asylum claim based on his sexual orientation, made it the information unavailable and new and previously evidence submitted warrant reopening this case. So you take unavailability and translate that into, you say it was unavailable. It was unavailable because he didn't tell anybody about it. Correct. He knew. I think that that is a difficult factual finding to make. Did he know? Did he come to terms? Was he able to articulate it? And that's one that no one engaged in. So what should the IJ have done differently under those circumstances that you just mentioned? The immigration judge should have done, with respect to the motion, the new and previously unavailable evidence. One, should have taken into account all of the factors presented by counsel, and two, taken into consideration the late filed, not late filed, the post removal filed death threats to determine whether there's new and previously unavailable evidence that goes to the heart of the asylum claim. At the very least, consider the death threats that happened post removal in violation of STVPRA rights. All right. Thank you, counsel. Thank you. You may proceed. May it please the court. Christina Greer on behalf of the Attorney General. Your Honors, as opposing counsel stated, the government does agree with Petitioner that this case should be remanded for additional proceedings before the agency on two grounds. And perhaps the reasoning is a little different between Petitioner and the government, but ultimately the ask is the same. It is that the, first of all, the board should have an opportunity to consider whether the evidence that was submitted in the emergency motion to the immigration court, the second motion before the immigration judge, is material, previously unavailable, and could not have been presented because it is evidence that was of events that took place after the non-citizen or after Petitioner was already in Honduras. That evidence was not previously available at the time of the prior hearing with his mother. And the agency decisions at 369 through 70 on page 7 and 693 through 95 do not consider that evidence in the analysis relating to whether Petitioner had submitted previously unavailable material evidence that was not, that he could not have provided it at the prior hearing. So, for that ground specifically, the court, or the, pardon me, the government requests that this case be remanded. And then second, because in the board's decisions and the immigration judge's decision on the motion to reopen and the motion to remand, the agency did not necessarily fully engage with the precise argument being presented. So, the agency interpreted the argument as being that the immigration court or the board should instruct DHS to start new proceedings for Petitioner. But that's not what was argued. And we believe that the agency should have another chance to address that argument. In circumstances such as this, when an agency requests remand to take further action consistent with legal standards, remand should generally be granted in the absence of apparent or clearly articulated countervailing reasons. And the government is not aware of any such countervailing reasons. There's also case law stating that, as a general rule, courts only refuse remand when the request is frivolous or made in bad faith by the government. And we do not believe that the request here is being made in bad faith. So, the government respectfully requests that the court remand this case. So, just so we're clear on the argument that you are articulating before us now, the new and previous evidence that may have been unavailable is what? The death threats from, is that what you're referring to, or is it something more than that? I think that's the clearest evidence. But in our motion, in our remand motion, we noted that it is also unclear, and the immigration judge didn't make a factual finding on this, whether, as counsel discussed, whether Petitioner had firmly come to grips with his sexual orientation. And also, I think she put it well as whether he was able to articulate his sexual orientation at that time of the prior hearing with his mother. And whether the circumstances of that hearing, which were televideo before an immigration judge, Petitioner and his mother were in one room, the immigration, and from what I can tell in the record, the immigration judge and everyone else was appearing televideo, whether there really was an opportunity to present that evidence in that circumstance. I assume, but just for the record, that since you agree to remand, you're also agreeing that the fact that he is now over 18 doesn't matter? So it depends on what we're talking about. When it comes to the asylum application, that's correct. Now, the government may, and this is where it's somewhat difficult to defend this case because the board didn't necessarily explain whether the board believed that that prior hearing because I'm defending the board's decision. But in other litigation, DHS has prevailed in districts in this circuit. I don't believe there's a case in this circuit, but there is a case in the Third Circuit that the circumstances of his removal were proper. And so I would not want to concede that argument, that he was required to have a new NTA, a new notice to appear for new 240 proceedings under the TVPRA. But I hesitate to get into that argument because the agency didn't make a decision on it here. But if the court wants to hear more about it, I would be happy to discuss it. And if there are no further questions for the government, I will cede the balance of my time. Thank you, Counsel. Thank you. Rebuttal. This will be very short, but I do want to address something that was just mentioned, Your Honor, respectfully. When an individual is found outside of the country with an enforceable order of removal, that removal order has been executed. Even though there's no briefing from the Department of Homeland Security on this issue, that second removal order had no justification and no authority. So if the court is interested in that issue, as Opposing Counsel mentioned, I'm happy to delve into that. The government agrees, as you just heard, that the immigration judge and the board failed to address critical arguments and evidence presented at every stage of the case. Such failures require remand, and we are requesting guidance on implementation of the TVPRA. There is no doubt that the TVPRA controls in this case. The statute was enacted to give children the full realm of due process, and DHS deprived Kelmy of his rights through the deportation in violation of the TVPRA. DHS's interpretation of the statute is not logical and cannot be reconciled with the plain language of the statute. Thank you. Thank you, Counsel. The court will take this matter under advisement. Yes.